[Civ. No. 5915. Third Appellate District.—February 1, 1938.]

In the Matter of the Guardianship and Estate of MINNIE BOUTZ, an Incompetent Person. FRANCIS E. BOUTZ, Appellant, v. W. J. ALBERT, as Guardian, etc., Respondent.

T. F. Peterson for Appellant.

Pugh & Pugh and M. O. Wilkins for Respondent.

Wilcox & Rodin, as *Amici Curiae,* on Behalf of Respondent.

PULLEN, P. J.—Appellant here contends that the superior court erred in appointing a nonresident as guardian of the person and estate of a resident insane person.

In 1913 Minnie Boutz, then the wife of M. M. Boutz, was adjudged insane and committed to a state hospital. In 1916 M. M. Boutz was appointed guardian of the person and estate of his wife. In 1928 Minnie Boutz was paroled from the hospital to the care of her brother, residing in Oregon. In 1932 Boutz resigned as guardian and his account was settled and approved. In his resignation as guardian he set forth that Minnie Boutz was under the personal care and observation of her brother in Oregon, and that it would be for the best interests of the incompetent that the brother be appointed guardian of her person and estate. Thereupon, upon a petition duly filed, W. J. Albert, the brother, was appointed such guardian of her person and estate.

Thereafter accounts were annually filed by the guardian and duly settled and approved until 1936, when Minnie Boutz having died, he filed his final account. Francis E. Boutz, a son of deceased, residing in California, was appointed administrator of her estate, and to this final account of the guardian, both as administrator and as an heir at law, filed objections. The gist of the objections was that W. J. Albert, being a nonresident of California, the court was without jurisdiction to appoint him as guardian. It is also claimed that even assuming the appointment to be valid, respondent never qualified because of his nonresidence, and never having qualified, his acts were void.

It is further claimed that in any event the superior court of California was without jurisdiction to settle respondent's accounts except in so far as they related to the property of the ward in California, and could make no valid order affecting any property beyond the boundaries of the state.

We are not called upon to determine whether the court could have appointed a nonresident as guardian of the person as that question has become immaterial by reason of the death of the ward.

The superior court being a court of general jurisdiction, an order appointing a guardian of an incompetent person is not open to collateral attack, and will be presumed to have been correctly made. (*Isaacs* v. *Jones*, 121 Cal. 257 [53 Pac. 793, 1101].) *Hodgdon* v. *Southern Pac. R. R. Co.*, 75 Cal. 642 [17 Pac. 928], applies the general rule directly to the appointment of a guardian by a probate court. *Estate of Sharon*, 179 Cal. 447 [177 Pac. 283], dealing with adoption where the proceedings are purely statutory and unknown to the common law, holds the record must show all the jurisdictional requirements. However, proceedings in guardianship were known to the common law, and if no want of jurisdiction appears on the face of the record an order appointing a guardian is not subject to collateral attack, and in the absence of a direct attack, it will be presumed that the order is valid.

In *Johnson* v. *Furchtbar*, 96 Okl. 114 [220 Pac. 612] certain persons sought to recover possession of land upon the ground that the sale by the guardian of the minor to whom the land belonged was ineffectual because the probate court was without jurisdiction, it being alleged that the ward was a nonresident of the county wherein the appointment was made, and that the hearing was had without notice and without a determination of the question of residence of the ward.

The court said:

"It has been repeatedly held that where a judgment is entered by a court of general jurisdiction, and the record is silent as to the existence of facts, which gave the court jurisdiction, it will be presumed that all the facts necessary for the proper rendition of the judgment have been found to exist before judgment was rendered, and the same cannot be attacked in a collateral proceeding."

Let us, nevertheless, consider the principal contention that the court was precluded by statute from appointing a nonresident guardian.

Section 1461 of the Probate Code provides that any relative or friend may file a verified petition alleging that a person is insane. Nowhere does the code attempt to enumerate or

designate whom the court shall appoint as guardian, but vests a large discretion in the court, the paramount consideration being the welfare of the ward. An examination of section 1580 of the Probate Code discloses that after appointment, the removal of a guardian is discretionary with the court upon a guardian becoming a nonresident of the state.

In volume 14, Ruling Case Law, page 571, the principle is stated: "A nonresident may be appointed guardian of the estate of an incompetent if a statute makes no reference to residential qualifications." *In re Sall,* 59 Wash. 539 [110 Pac. 32, 140 Am. St. Rep. 885], cited by Ruling Case Law in support of this proposition, is quite analogous to the situation here before us. It appears that Sall, a resident of Minnesota, applied to the courts of Washington for, and was appointed guardian of the estate of his brother. An appeal was taken from the order of appointment upon the ground, among others, that the nonresidence of the applicant disqualified him to act as guardian, and that the Washington court was without jurisdiction to appoint as guardian a resident of one domiciled in the state of Minnesota.

"It is next insisted that the court in any event had no power to appoint a nonresident as a guardian. It will be remembered that the statute . . . provides for a guardian for the estate only. No reference is made to residential qualifications. The general rule as we understand it to be is that, in the absence of a statute, the court may appoint any fit and proper person if he be a resident or nonresident. His bond answers for his presence, and, in theory at least, he is always before the court. While a court should not, and probably would not, have the power to appoint a nonresident guardian of the person of a resident incompetent, the manifest objections to such a procedure can have no application where it is the thing and not the person which is the subject of the court's intervention."

In 28 Corpus Juris, page 1081, it is said: "While in the absence of statutory provisions to the contrary, *a nonresident may be appointed guardian,* such appointments are not favored, the rule being that a resident should be appointed rather than a nonresident, unless some very strong reason for appointing the latter is made to appear."

So in the absence of a specific statutory bar the courts of this state have the power to appoint a nonresident guardian,

and except perhaps that he may be subject to removal by reason of nonresidence, such guardian, as long as he remain such, has all the rights and powers of any guardian.

The bond given by a guardian before the issuance of letters, is enforceable regardless of the place of his residence, and furnishes protection to the estate and assurance that a ward will not be prejudiced by reason of the possible immunity of the guardian from the process from this state.

Appellant makes no point that the incompetent person had moved from the state prior to her death. That question is not presented here, and we are assuming the fact to be that the legal residence of the ward was in Del Norte County. She was a resident of the county of Del Norte at the time the guardianship was instituted and the guardian appointed, although she was paroled to her brother in Oregon, and for several years before her death lived in Oregon, but there is nothing in the record before us showing any change of residence. Neither do we pass upon the question of the nonresidence of the guardian of the person, for, as before remarked, that issue was terminated by the death of the ward.

Appellant suggests that a guardian is a public officer, and therefore the provisions of section 841 of the Political Code require such officer to be a resident of California, but a guardian is not classified as a civil officer.

By virtue of section 1606 of the Probate Code appellant also attempts to read into the provisions of the Probate Code, referring to the guardianship of insane persons, the provisions of the code relative to the appointment of executors and administrators, but such section cannot be applied here as that section applies to matters of procedure only.

It is also claimed that the guardian appointed in California cannot deal with the property owned by the ward in Oregon and Kansas. As to the Kansas property, all that was done was to collect the rents and pay the taxes. The property in Oregon seems to have been personal property, and if the ward was a resident of California, and we find nothing to the contrary in the record, then her personal property would be under the jurisdiction of California.

We find no error in the order from which this appeal is taken, and the same is affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1938.