[Civ. No. 27419. Second Dist., Div. Two. April 6, 1964.]

Estates of STEPHEN V. ROSIN et al., Minors, etc. UNITED CALIFORNIA BANK et al., Plaintiffs and Respondents, v. CHARLOTTE V. ROSIN, Defendant and Appellant.

[Civ. No. 27420. Second Dist., Div. Two. April 6, 1964.]

Estate of VICTOR M. ROSIN, Deceased. CHARLOTTE V. ROSIN, Plaintiff and Appellant, v. UNITED CALIFORNIA BANK, as Executor, etc., et al., Defendants and Respondents.

Ward & Heyler, Guy E. Ward and Charles A. Druten for Appellant.

Harvey & Viereck, Louis C. Viereck, Arthur Kessler, Mitchell, Silberberg & Knupp and John L. Nourse for Respondents.

HERNDON, Acting P. J.—Two appeals are presented herein: (1) from an order appointing guardians of the estates of two minor children, and (2) from an order granting a family allowance made in the Estate of Victor M. Rosin, deceased.

Appellant, Charlotte V. Rosin, is the mother of Stephen V. Rosin and Benita V. Rosin, born December 1, 1948, and June 6, 1950, respectively. A final judgment of divorce was entered which severed the marriage of appellant and the children's father, Victor M. Rosin, prior to his death, which occurred on

May 2, 1962. Under the terms of the interlocutory decree entered on February 13, 1959, appellant was granted custody of the minor children subject to certain specific rights of visitation granted to the father. During the second week of November 1959, appellant removed the children to Palm Beach, Florida, in contempt of the court's orders. (See *Rosin* v. *Superior Court,* 181 Cal.App.2d 486 [5 Cal.Rptr. 421].) The children were returned to California during the summer of 1960 and have since resided here. Appellant continued to reside in Florida.

Under the terms of the divorce decree, appellant was awarded $950 per month alimony and $200 per month per child for child support. This order was never modified prior to the father's death. In 1953, decedent had been appointed guardian of the estates of his minor children and continued to act as such until the time of his death. His last will and testament, executed in 1953 and confirmed as modified by a codicil executed in 1958, named the United California Bank and his brother, Stanley Rosin, hereinafter jointly referred to as respondents, as coexecutors of his will and as cotrustees of the testamentary trusts thereby created. Appellant is not a beneficiary under either the will or the trust.

Decedent's will also designated respondents as the parties whom he desired to succeed him as guardian of the estates of the children. In accordance with this designation, respondents petitioned for appointment in the guardianship proceedings. Appellant objected thereto and prayed for her own appointment.

In the probate proceeding, appellant filed a petition for a family allowance on behalf of the children and prayed for an order requiring respondents, as coexecutors, to pay directly to her the sum of $3,000 per month for the support and maintenance of the children pending final distribution of the estate. Respondents filed their opposition to said petition alleging that the amounts requested were grossly excessive and that payment of the allowances to appellant would not be in the best interests of the minor children as beneficiaries of the estate. Respondents affirmatively prayed that a reasonable family allowance be allowed and that the allowance be paid directly to the guardians of the children's estates.

On November 29, 1962, the court filed its findings and its order on the petition for family allowance. The sum of $1,000 per month was fixed as a reasonable amount for the support of the minor children and it was provided that the allowance

be paid to the guardians of the children's estates. This order forms the basis of one of the appeals herein, appellant contending that the award is inadequate, constitutes an abuse of the court's discretion, and, further, that it should be made payable directly to her.

On the same date, the court announced its findings and made its order in the guardianship proceedings appointing respondents the successor guardians of the children's estates. Appellant appeals from this order, contending that as a matter of law she was entitled to the appointment. Custody of the children is not in issue, nor is any question raised regarding her right to act as guardian of their persons. Both parties agree that the decedent had the right to appoint guardians for the property of his children passing under his will (Prob. Code, § 1402), but that in his role of guardian of the estates owned by them during his lifetime he had no statutory right to nominate his successor. (*In re Crocker*, 174 Cal. 660, 661 [163 P. 1015].)

It is also agreed that even in cases involving guardianships of the person, or of the person and estate, the court appointing such guardian is vested with a substantial amount of discretion and that such determination will not be set aside on appeal in the absence of a showing of a clear abuse of that discretion. (24 Cal.Jur.2d, Guardian and Ward, §§ 17-20, pp. 209-212.)

Appellant, however, contends that under the terms of Probate Code, section 1407,[1] she is entitled, as a matter of right, to be appointed guardian of her children's estates, and that in the absence of a finding of unfitness any other appointment constitutes an abuse of discretion as a matter of law. We do not so regard this section. It is clear that when considered with the sections which precede and follow it, the Legislature's primary concern in specifying the order of priority therein was with regard to guardians of the persons, or the persons and estates, of minors rather than to guardians of their estates only. Thus section 1406 setting forth the rules for appointment makes specific reference to "the best interest

---

[1]Probate Code, section 1407, provides: "Of persons equally entitled in other respects to the guardianship of a minor, preference is to be given as follows: (1) To a parent; (2) To one who was indicated by the wishes of a deceased parent; (3) To one who already stands in the position of a trustee of a fund to be applied to the child's support; (4) To a relative; (5) If the child has already been declared to be a ward or dependent child of the juvenile court, to the probation officer of said court."

of the child in respect to its *temporal and mental and moral welfare*; . . ." (Italics added.) Section 1408, dealing with rights as between the parents, makes the age of the child a relevant factor in language substantially identical to that found in Civil Code, section 138, subdivision (2), relating to custody of minor children in actions for divorce and separate maintenance. This factor has been a consideration in all of the decisions relating to or discussing these sections. Thus, in *Guardianship of Smith,* 42 Cal.2d 91, 92 [265 P.2d 888, 37 A.L.R.2d 867], it was stated: "It is settled in this state that in either guardianship proceedings or custody proceedings in a divorce action, the parents of a legitimate child have preference over a nonparent and *the custody* shall not be given to a nonparent unless the parent is found unfit. 'Where a parent applying *for custody* is in a position to take the child and is not shown to be unfit, the court *may not award custody* to strangers merely because it feels that they may be more fit or that they may be more able to provide financial, educational, social, or other benefits. . . . [Citing cases.] "[T]he discretionary power of a trial court necessarily is limited by those provisions of the code wherein the express policy of the Legislature regarding general questions *of custody* are set forth (Civ. Code, §§ 138, 197; Prob. Code, §§ 1407, 1408) and by the judicial interpretation of those code provisions in relation to the specific questions presented by the instant case." [Citation.] Section 1407 of the Probate Code provides that as between persons equally entitled in other respects to the guardianship of a minor preference is to be given first to a parent. This section has been construed to be substantially the same as former section 246, subdivision 3, of the Civil Code and section 1751 of the Code of Civil Procedure which provided, in substance, that a parent if competent is entitled *to custody* in preference to any other person. . . .' " (Italics added.)

We need not determine the exact weight, if any, that should be given the priorities set forth in section 1407 of the Probate Code in a case which does not involve the custody of a minor, but his estate only, in order to conclude that the trial court did not err in refusing to appoint appellant guardian of the minors' estates in the instant case. Initially, it should be noted that section 1407 expressly provides that as between ". . . persons *equally entitled in other respects* to the guardianship of a minor, preference is to be given as follows: . . ." (Italics added.) Although appellant be

not "unfit" to have the custody of the minor children, it does not follow that in view of the paramount interest of the court in the present and future welfare of the children that she has shown herself "equally entitled in other respects" to manage their substantial estates.

Appellant testified that it was her immediate intention to return to Florida where she had been a resident since 1959. While there is no statutory abridgment of the court's power to appoint a nonresident as guardian (*Guardianship of Levy*, 137 Cal.App.2d 237, 248-249 [290 P.2d 320]), such circumstance alone goes far to demonstrate the propriety of the court's determination. " 'While in the absence of statutory provisions to the contrary, a nonresident may be appointed guardian, such appointments are not favored, the rule being that a resident should be appointed rather than a nonresident, unless some very strong reason for appointing the latter is made to appear.' " (Italics omitted.) (*Guardianship of Boutz*, 24 Cal.App.2d 644, 647 [76 P.2d 154].)

In addition, while it does not prevent the appointment of a nonresident as guardian, section 1580, subdivision (6), of the Probate Code lists removal from the state as one of the grounds authorizing a court to remove a guardian theretofore appointed.

As previously noted, while the decedent's wishes regarding his successor guardian are not binding upon the court, they are entitled to consideration. (*In re Crocker, supra*, 174 Cal. 660.) This is particularly true where the nominated guardian was familiar with the handling of the ward's estate during the decedent's lifetime. Thus, the court in *Crocker, supra*, stated (p. 662) : "[E]ven if we regard Mr. Phipps as a 'stranger' to Mrs. Crocker [the incompetent] in the sense that he did not know her very well personally, the evidence showed without conflict that *he was familiar with her business affairs—probably more so than any other person*; . . ." (Italics added.) The same statement could be made with reference to respondents herein. The United California Bank had been the depository of these estates and decedent's brother had been closely related to him in many business and investment ventures.

Finally, appellant's demands upon the decedent's estate by way of family allowance, which will be discussed more fully hereafter, demonstrated such a "free and easy" approach to bountiful expenditures of her children's monies that the trial court could reasonably conclude that it was not

in their best interests to allow her to manage their guardianship estates.[2]

---

[2]Appellant introduced the following breakdown of her anticipated expenditures:

"HOME MORTGAGE Approx. $ 400.00 Mo.
 First Mortgage - $30,000 - $250.76 Mo.
 (Home Federal)
 Second Mortgage - $ 6,650 - $ 47.29 Mo.
 (Home Federal)
 Third Mortgage - $ 1,600 - $ 93.45 Mo.
 (Atlantic Nat'l) $391.50

"HOUSE INSURANCE & TAXES Approx. $ 150.00 Mo.
 Property taxes about $100 mo.
 House Insurance about $50 mo.
 (Palm Beach county taxes) $812.08 yr.
 (Town of Palm Beach taxes) $309.87 yr.
 $1121.95

"SERVICES & MAINTENANCE Approx. $ 250.00 Mo.
 Gardener $ 50.00 mo.
 Handyman $ 40.00 mo.
 Pool Maintenance $ 40.00 mo.
 Utilities:
 Water - about $20.00 mo.
 Gas - about $ 20.00 mo.
 Electricity - about $ 25.00 mo.
 Telephone - about $ 50.00 mo.
 Pest control $ 8.00 mo.
 $253.00

"MAID $ 200.00 Mo.

"LAUNDRESS
 ($15 a day, 2½ days a wk.) Approx. $ 150.00 Mo.

"DRY CLEANING & FLAT LAUNDRY Approx. $ 100.00 Mo.

"FOOD: Approx. $ 600.00 Mo.
 Meat - about $350.00 Mo.
 Dairy - about 35.00 Mo.
 Bakery - about 25.00 Mo.
 Produce - about 75.00 Mo.
 Staples - about 125.00 Mo.
 $610.00

"DRUGS & SUNDRIES Approx. $ 250.00 Mo.

"HOUSECLEANING SUPPLIES
 & PAPER GOODS Approx. $ 200.00 Mo.

"TRANSPORTATION Approx. $ 200.00 Mo.

"MISCELLANEOUS
 Seamstress - about $ 75.00 Mo.
 Beauty Shop - Benita - about $ 20.00 Mo.

Appellant's secondary assignment of error asserting the alleged inadequacy of the family allowance awarded by the court is equally unmeritorious. █ "The amount of family allowance to be granted is within the sound discretion of the trial court [citation] and its action in making the allowance will not be disturbed upon appeal unless an abuse of discretion is clearly shown. [Citations.] █ In view of the wide range of discretion vested in the trial court in granting a family allowance it does not appear from the record herein that there has been any abuse in the amount awarded." (*Estate of Toland,* 98 Cal.App.2d 386, 387 [220 P.2d 16].)

The trial court made findings based upon substantial evidence that the gross income of the decedent's estate would be approximately $12,000 per year and that $1,000 per month constituted a reasonable sum for the support of the minors pending distribution of the estate. Appellant was not entitled to a family allowance in her own right and was receiving

| | | | | |
|---|---|---|---|---|
| Barber Shop - Stephen - about | $ 10.00 Mo. | | | |
| Shoe Repair - about | $ 20.00 Mo. | | | |
| Elect. appliance repair & | | | | |
| replace. - about | $ 35.00 Mo. | | | |
| Bike repairs - about | $ 20.00 Mo. | | | |
| TV, phono. & radio repairs - | $ 75.00 Mo. | | | |
| | $225.00 Mo. | | | |
| "CLOTHING - Benita | | Approx. | $ 300.00 | Mo. |
| "CLOTHING - Stephen | | Approx. | $ 300.00 | Mo. |
| "ALLOWANCE - Benita | | | $ 75.00 | Mo. |
| "ALLOWANCE - Stephen | | | $100.00 | Mo. |
| "GIFTS & ENTERTAINMENT | | Approx. | $ 300.00 | Mo. |
| "MEDICAL & DENTAL | | Approx. | $ 250.00 | Mo. |
| Pediatrician - about | $ 80.00 Mo. | | | |
| Ophthalmologist - about | $ 25.00 Mo. | | | |
| Orthodontist & Dental - about | $150.00 Mo. | | | |
| (990 due in Calif.) | $255.00 | | | |
| ($1100 due in Fla.) | | | | |
| "PRIVATE DAY SCHOOL | | Approx. | $ 400.00 | Mo. |
| "PRIVATE LESSONS | | Approx. | $ 65.00 | Mo. |
| (Tennis, music, dancing, water sports, foreign languages.) | | | | |
| "RELIGIOUS INSTRUCTION | | Approx. | $ 45.00 | Mo. |
| "VACATIONS | | Approx. | $ 80.00 | Mo. |
| (Summer holiday, Christmas, etc., about $1000.00 yr.) | | | | |
| | TOTAL | Approx. | $4,665.00 | |
| | | Less one-third | 917.00 | |
| | | | $3,748.00" | |

only $400 per month as child support prior to decedent's death. There was evidence that decedent expended further sums on behalf of the children, but these never averaged more than $550 per month including the $400 provided for in the interlocutory and final judgments of divorce. Appellant also received $950 by way of alimony which, of course, was taxable to her. She testified that although she had no other source of income, she had not sought modification of these awards during decedent's lifetime.

Although she testified that she would now require $4,665 per month to operate a home for the children, and felt that $3,000 should be allowed her as family allowance from the estate proceedings and $748 from the children's guardianship estates as their fair share of the costs of maintaining their home, obviously this provides no basis for holding that the trial court was bound to accept such testimony as a matter of law. If the income from the estate proves more substantial than anticipated, or the actual needs of the children are greater than provided for by the present order, such order may be hereafter modified. (*Estate of Nelson*, 167 Cal. 321, 325 [139 P. 692].)

The requirement that the support allowance be paid to the guardian of the children's estates rather than to appellant directly was entirely reasonable. In addition to the fact that appellant indicated her plan to leave the jurisdiction of the court, the court doubtless recognized the fact that the children had two potential sources of income, i.e., their existing estates and their family allowance, and that the determination as to the amounts to be paid from each could be more readily made if they were consolidated and supervised in one proceeding. Further, the propriety of this method of payment was in effect stipulated to by appellant at the beginning of the hearing.[3]

Lastly, appellant makes the parenthetic contention that, since respondents are the executors of decedent's will and will be the trustees of the trust created thereby, they should not be guardians of the children's estates and the intermediate recipients of the family allowance because "[t]heir duties in these capacities require them to preserve

---

[3] "Mr. Viereck [counsel for respondent Bank]: It is the position of the [respondents] that any allowance which the Court sees fit to grant should be paid to the guardian of the estate which is to be appointed. Mr. Ward [counsel for appellant]: Well, I haven't any argument with that."

the corpus of the estate and are adverse to the interests of the minor children as income beneficiaries, ..." This remarkable observation only serves to underscore the mistaken assumption that is inherent in all of appellant's testimony, that is, that a guardian of the children's estates need not be particularly concerned with the preservation of their estates, but only with their immediate standards of living. Rather than creating an adverse interest, respondents' status as trustees is made a ground for preference by section 1407, subdivision (3), of the Probate Code, which provides that priority shall be given "to one who already stands in the position of a trustee of a fund to be applied to the child's support." Appellant's failure to grasp this principle actually establishes a pragmatically adverse interest on her part, and further serves to support the determinations made by the trial court.

The orders under review are affirmed.

Roth, J., and Kincaid, J., pro tem.,* concurred.

A petition for a rehearing was denied April 29, 1964.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.