[S.F. No. 23372. In Bank. Mar. 2, 1976.]

Guardianship of the Person and Estate of THOMAS NELSON BROWN, an Incompetent Person.
WILLETT THOMAS, Petitioner and Respondent, v.
NANCY NIELSEN BROWN et al., Objectors and Appellants.

**COUNSEL**

Patricia D. Lee, Douglas P. Haffer and David Garcia for Objectors and Appellants.

Paul G. Dobbins for Petitioner and Respondent.

## OPINION

**SULLIVAN, J.**—In this guardianship proceeding Nancy Nielsen Brown, objector (Nancy), and Thomas Nelson Brown, alleged incompetent (Thomas), appeal from an order appointing respondent Willett Thomas (Willett), the mother of the incompetent, guardian of his person and estate and authorizing her to take him to the State of New York for medical care.

Thomas, a 35-year-old man, became incapacitated in March 1974 as the result of a stroke. He was rendered paralyzed and mute. During his ensuing hospitalization, he was unable to effectively communicate and responded only to basic stimuli such as hunger and pain. For a period of approximately five years prior to his illness Thomas and Nancy lived together while unmarried. On May 18, 1974, while Thomas was on day leave from the hospital, he and Nancy went through a marriage ceremony without having obtained a marriage license. They claim to have been validly married under the provisions of Civil Code section 4213. In June 1974 Thomas was released from the hospital to Nancy's custody. She has a masters degree in vocational rehabilitation counseling and with the help of friends and doctors has developed and coordinated a rehabilitation program for Thomas. As a result, Thomas' condition improved to such an extent that at the time of trial he was able to communicate with his friends and wife, walk, provide for his basic bodily needs and perform simple household chores.

Willett Thomas, a resident of Brooklyn, New York, is Thomas' mother. She is employed at Brooklyn Hospital. During the eight or nine years prior to Thomas' illness Willett and Thomas saw each other on only two or three occasions and communicated infrequently. Upon learning of his illness from the staff of the hospital where Thomas was treated, Willett came to California. Her purpose was to take Thomas to Brooklyn for medical attention.

On June 11, 1974, Willett filed in the court below a petition to have Thomas adjudged incompetent and to have herself appointed guardian of his person and estate. Nancy filed an objection to the petition alleging in substance that it would not be in Thomas' best interest to remove him from the family, friends and rehabilitation program which he had in this state.[1] A hearing was held in July 1974 during which the trial court

---

[1]Because of the arguments presented and the relief requested, the trial court treated Nancy's objection as an alternative petition that she be appointed guardian. Inasmuch as

received evidence on whether Thomas was incompetent and whether his mother Willett or his wife Nancy should be appointed his guardian. At the conclusion of the hearing on July 24, the court orally announced its decision to find Thomas incompetent and to appoint Willett his guardian. The record shows that upon such announcement of the intended decision Nancy requested findings. Nevertheless on July 26, 1974, the court filed its formal order adjudging Thomas an incompetent, appointing Willett guardian of his person and estate, and authorizing her to take Thomas to New York for medical care. On July 31, Nancy filed a written request for findings of fact and conclusions of law.

Thereafter at some date not clearly disclosed by the record, the court made what appear to be proposed findings of fact and conclusions of law as follows:

"It is true that: 1. That on May 18, 1974, said Thomas Nelson Brown was an incompetent person. [¶] 2. That on the date of hearing in these proceedings, to wit, July 24, 1974, said Thomas Nelson Brown was an incompetent person. [¶] 3. That Thomas Nelson Brown is in need of a guardian for his person and estate. [¶] 4. That petitioner, Willett Thomas, is the mother of the said incompetent person, and is fully qualified to manage the affairs and estate of said incompetent Thomas Nelson Brown."

Nancy objected to the proposed findings on the grounds that they were not supported by the evidence and did not cover all material issues raised. She also proposed counterfindings and requested specific findings on the issues of competency and the best interest of Thomas in the determination of the appointment of a guardian. The court apparently overruled these objections and rejected the requested findings.[2] This appeal followed.[3]

the filing of Willett's petition gave the court jurisdiction to appoint any person as guardian of Thomas' person or estate if it appeared to be in the best interest of the incompetent (*Estate of Schulmeyer* (1915) 171 Cal. 340, 344 [153 P.2d 233]; *Guardianship of Lyle* (1946) 77 Cal.App.2d 153, 158 [174 P.2d 906]), such treatment was unnecessary to enable the court to appoint Nancy guardian had it chosen to do so.

[2]Since we conclude that the order must be reversed on other grounds, we do not reach appellants' contention that the order is void because it was filed before the findings and because the findings themselves were prematurely filed without compliance with rule 232 of the California Rules of Court.

[3]During the pendency of this matter in the Court of Appeal that court denied a petition for a writ of supersedeas to stay the power of the guardian pending appeal. This court granted a hearing, issued the writ and retransferred the matter to the Court of

Appellants make two basic contentions: First, that the trial court failed to make findings of fact, as requested, on several material issues in the case, and that such failure constitutes reversible error; and second, that the evidence is insufficient to support the determination that Thomas is incompetent and that his mother is entitled to be appointed guardian.

Matters of practice and procedure in guardianship proceedings unless otherwise prescribed in the Probate Code or in rules adopted by the Judicial Council are governed by the provisions of part 2 (commencing with § 307) and of article 3 (commencing with § 2016) of chapter 3 of title 3 of part 4 of the Code of Civil Procedure. (Prob. Code, §§ 1233, 1606; *Guardianship of Lyle, supra,* 77 Cal.App.2d 153, 156.) Furthermore, under Probate Code section 1230, "[a]ll issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practice in civil actions. . . . If no jury is demanded, the court must try the issues joined, and sign and file its decision in writing, as provided in civil actions." ■ Accordingly, findings of fact in guardianship proceedings are governed by the provisions of Code of Civil Procedure section 632 regarding questions of fact tried by the court. That section essentially provides that findings of fact shall be required in superior courts only upon the request of a party appearing at the trial made within the time and in accordance with the procedures permitted by rules of the Judicial Council.[4] A proper and timely request for findings having been made by Nancy within 10 days after the court's announcement of its intended decision as required by California Rules of Court, rule 232 (b), findings were required in this case.

Where findings are required, they must be set forth with a degree of specificity which fairly discloses the court's determination of all issues of

---

Appeal. Upon our granting a hearing in this court after decision in the Court of Appeal, we ordered the writ of supersedeas transferred to this court to remain in full force and effect pending final determination of the appeal.

[4]Code of Civil Procedure section 632, subdivision 1, provides in part: "In superior courts and municipal courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required, except as herein provided. [¶] In superior courts, upon such trial, the court shall announce its intended decision. Within the time after such announcement permitted by rules of the Judicial Council, any party appearing at the trial may request findings. Unless findings are requested, the court shall not be required to make written findings and conclusions." By negative implication from this section, written findings and conclusions are required whenever a party to the proceeding requests such findings in accordance with the rules of the Judicial Council.

fact material to the judgment in the case. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 232 (e).)[5]

It is settled that, unless waived, express findings are required on all material issues raised by the pleadings and the evidence, and failure to find on a material issue will ordinarily constitute reversible error. (*Edgar* v. *Hitch* (1956) 46 Cal.2d 309, 312 [294 P.2d 3]; *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 873 [250 P.2d 598]; *James* v. *Haley* (1931) 212 Cal. 142, 147 [297 P. 920]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 337, p. 3139.) Where the complaining party has introduced substantial evidence to support a finding in his favor on such an issue, reversal is compelled. (*Hemmerling* v. *Tomlev, Inc.* (1967) 67 Cal.2d 572, 576 [63 Cal.Rptr. 1, 432 P.2d 697]; *Branche* v. *Hetzel* (1966) 241 Cal.App.2d 801, 810 [51 Cal.Rptr. 188]; *San Jose etc. Title Ins. Co.* v. *Elliott* (1952) 108 Cal.App.2d 793, 801 [240 P.2d 41].) The old doctrine of implied findings may not be invoked when the complaining party has made known to the trial court his claim as to the inadequacy of the findings. (See 4 Witkin, Cal. Procedure, *supra,* §§ 341-343.) Code of Civil Procedure section 634 now provides in pertinent part that "[w]hen written findings and conclusions are required, and the court has not made findings as to all facts necessary to support the judgment . . . and the record shows that such omission . . . was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal . . . that the trial court found in favor of the prevailing party as to such facts or on such issue."

Appellants assert that the findings of the trial court are deficient in three respects, in that: (1) the court failed to make a finding in accordance with Probate Code section 1460, whether Thomas "by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons"; (2) the court failed to make a finding whether it is in the best interest of Thomas' welfare for his mother, Willett, to be appointed his guardian; (3) and, the court failed to make a finding whether there exists a "very strong reason" for appointing a nonresident

---

[5]Code of Civil Procedure section 632, subdivision 1, provides in pertinent part: "Where findings are required, they shall fairly disclose the court's determination of all issues of fact in the case."

California Rules of Court, rule 232 (e) provides: "Findings shall fairly disclose the court's determination of all issues of fact material to the judgment in the case and shall be concisely and chronologically stated whenever practicable. Findings shall not refer merely to the truth or falsity of allegations contained in the pleadings."

guardian as opposed to the resident objector, Nancy. We conclude that as to the second of these omissions the court committed reversible error.

■ As noted above, the trial court found "that on the date of hearing in these proceedings . . . Thomas Nelson Brown was an incompetent person." Appellants argue that this finding is inadequate to bring Thomas within the terms of Probate Code section 1460, authorizing the appointment of a guardian for an incompetent person, and that instead the trial court should have made a finding in accordance with the definition of "incompetent" in section 1460 as to whether or not Thomas was a person "who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons." We long ago held, however, that in view of the fact that this definition of an incompetent is contained within the section authorizing the appointment of a guardian, the mere recital that an individual is incompetent is a sufficient finding of the ultimate fact in a guardianship proceeding. (*Estate of Schulmeyer, supra,* 171 Cal. 340, 344.) In the absence of any indication in the record that the trial court applied a different and incorrect definition of incompetence, we cannot conclude that the court found that Thomas was an incompetent person in a sense other than as defined in section 1460.

■ The primary thrust of appellants' case before the trial court was that it was in the best interest of the incompetent to remain with his wife in his home in San Francisco pursuing the rehabilitation program which she had organized and coordinated for him. Nancy argued that upon a finding of incompetency the only consideration governing the appointment of a guardian is the best interest of the incompetent. As noted, in her objections to the court's findings, she specifically requested a finding on that point. No express finding in that respect was made. If such a finding was required, Nancy's pleadings, briefs and requests for specific findings were sufficient to raise and frame the best interest issue and apprise the court of its obligation to make such a finding.

The statutory provisions dealing with the appointment of guardians for insane or incompetent persons (Prob. Code, § 1460 et seq.) contain no explicit order of preference or legal standard to be applied by a court in the selection of a guardian for an incompetent. Decisions by the appellate courts of this state have established, however, that the paramount consideration guiding the trial court is the best interest of the incompetent. (See, e.g., *In re Guardianship of Crocker* (1917) 174 Cal.

660, 662 [163 P. 1015]; *In re Guardianship of Boutz* (1938) 24 Cal.App.2d 644, 646-647 [76 P.2d 154]; *Guardianship of Lyle, supra,* 77 Cal.App.2d 153, 158.) In analogous circumstances involving the appointment of a guardian for a minor and the appointment of a conservator, the Probate Code specifically states that the court is to exercise its powers to serve the best interest of the minor or conservatee. (Prob. Code, §§ 1406, 1752.) While the best interest of the incompetent is therefore a material issue in every guardianship proceeding, it is particularly significant where as in the instant case there are competing petitioners for appointment. It is only upon the basis of its determination of the best interest of the incompetent that the trial court is able to decide which petition to grant and which to deny. (*In re Guardianship of Crocker, supra,* 174 Cal. 660, 662.) For that reason the trial court should have made a finding on the best interest of the incompetent in order to fairly disclose its determination of all material issues necessary to support its appointment of Willett as guardian.

The only findings by the trial court at all relevant on the issue of Thomas' best interest are those stating that Thomas needed a guardian and that Willett was his mother and was fully qualified to manage his affairs and estate. These findings do not disclose, however, that the court determined that it would be in Thomas' best interest to appoint his mother guardian, nor, as we have indicated, may we imply such a determination from these findings. (Code Civ. Proc., § 634.) Furthermore, by no process of construction of the court's findings as to Thomas' mother may we conclude that the court found that it would be in Thomas' best interest to have his mother appointed instead of his wife. The court's findings simply do not disclose its consideration of the evidence presented by the parties on this issue.

As the record reflects, the trial court was not faced with a single uncontested petition for appointment which required simply a determination that the person involved was incompetent and needed a guardian and that the petitioner was qualified to act as such. The instant petition was contested and not only the filed objection but the evidence adduced required the court to make a difficult choice between the incompetent's mother and his wife. The evidence augmented this difficulty—on the one hand indicating little recent communication or contact between Thomas and his mother while revealing her concern for his plight and future welfare, and on the other hand indicating a five-year relationship culminating in a claimed marriage between Thomas and Nancy, disclosing her constant contribution to his rehabilitation, the resultant

improvement in his condition, and her apparent dedication to his future. It is significant that the trial court did not find Nancy either unqualified or unfit to be guardian. Obviously the situation called for the trial court to determine whether the appointment of the mother or the wife would be in the best interest of the incompetent. This was a material issue in the case upon which the court should have made an express finding, particularly after this omission was brought to the attention of the court and a request had been made for a further and specific finding as to whether or not appointment of Willett rather than Nancy was in the best interest of Thomas. (Code Civ. Proc., § 634; Cal. Rules of Court, rule 232(d).) No finding having been made on this material issue, and Nancy having introduced substantial evidence to support such a finding in her favor (see *Hemmerling* v. *Tomlev, Inc., supra,* 67 Cal.2d 572, 576, and other cases cited *supra*), we conclude that the order appointing Willett guardian must be reversed.

■ Appellants' last attack on the adequacy of the findings, namely that the trial court should have explicitly found whether there existed a "very strong reason" for appointing a nonresident guardian, is without merit. As there is no statutory bar, a nonresident guardian of an incompetent may be appointed. (*In re Guardianship of Boutz, supra,* 24 Cal.App.2d 644, 647.) Our case law, however, establishes that such appointments are not favored, and a resident guardian is preferred " 'unless some very strong reason [for the appointment of a nonresident] is made to appear.' " (*Guardianship of Mosier* (1966) 246 Cal.App.2d 164, 177 [54 Cal.Rptr. 447]; *Estate of Rosin* (1964) 226 Cal.App.2d 166, 172 [37 Cal.Rptr. 830]; *In re Guardianship of Boutz, supra,* at p. 647.) While the court will have to ascertain the existence of such a reason in every case where nonresidency is an issue, a finding on that question will necessarily be subsumed within the court's determination that the particular appointment is in the best interest of the incompetent. No separate finding is therefore required.

We now proceed to consider appellants' second contention that the evidence is insufficient to support the finding that Thomas is incompetent and that his mother is entitled to appointment as guardian. ■ In reviewing the evidence, we are cognizant of the broad discretion vested in the trial court to exercise its powers so as to serve the best interests of the incompetent. (*In re Crocker, supra,* 174 Cal. 660, 662.) It hardly needs repeating that the scope of our review is severely circumscribed. "All conflicts and any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the order. [Citations.] In cases of this type, as

in any other, we must uphold the findings of the trial court if there is any substantial evidence which, together with the aid of all inferences reasonably to be drawn from it, tends to support the judgment." (*Guardianship of Walters* (1951) 37 Cal.2d 239, 245 [231 P.2d 473].)

■ Applying this standard, we conclude that there was substantial evidence to support the court's finding that Thomas was incompetent on the date of the hearing. The evidence discloses that while Thomas' condition had substantially improved since his release from the hospital, he was unable to talk, communicated only with his wife and friends, required intensive care and assistance in regard to his physical needs and well-being, and could perform only simple tasks unless assisted. The court-appointed psychiatrist testified that he was unable to establish any direct rapport with Thomas, that Thomas seemed aware at times and able to indicate certain needs, but that this awareness was episodic.[6] Thomas' own personal physician testified that Thomas could not communicate but did respond to requests that he come into the examining room and sit down. In addition, the trial court had before it Thomas' medical records from the hospital which showed that he had suffered organic brain injury and a diabetic reaction, had recently experienced paralysis, and had sustained a severe loss of physical control and mental responsiveness. Finally, although not called to testify, Thomas was present in the courtroom and thus the court was able to observe his demeanor and responsiveness. (See *Guardianship of Walters, supra,* 37 Cal.2d 239, 249.) On the basis of this evidence the court was justified in finding that Thomas was mentally incompetent in that he "is unable, unassisted, properly to manage and take care of himself or his property . . . ." (Prob. Code, § 1460.)

■ As indicated, we have concluded that the order appointing Willett guardian must be reversed because of the trial court's failure to make a finding on a material issue necessary to support that order, namely, whether it is in Thomas' best interest for his mother to be appointed guardian instead of his wife. Nevertheless, for purposes of judicial economy and for the guidance of the parties and the court on

---

[6]The psychiatrist opined that Thomas was incompetent. While Nancy and Thomas are correct in contending that this opinion must be tested by a consideration of the facts from which it is derived (*Guardianship of Waite* (1939) 14 Cal.2d 727, 731 [97 P.2d 238]), the doctor's observations of Thomas' demeanor, his review of the medical history and his interview with Nancy provided him with sufficient facts such that his opinion cannot be considered completely arbitrary. His opinion, as well as the opinion of another psychiatrist who testified that Thomas was competent, were entitled to be considered by the court.

remand, we shall consider the sufficiency of the evidence as it relates to the appointment of a guardian. Because the issue before the trial court will be the best interest of the incompetent, we shall assume that a finding has been made that it is in Thomas' best interest to have his mother Willett appointed guardian and determine whether on the present state of the record there is sufficient evidence to sustain such a finding.[7] Since the court below was of necessity constrained to make a choice between Willett and Nancy, our examination of the record must extend to the evidence as a whole.

In support of her claim to be appointed guardian, Willett testified that she was Thomas' mother, and that she had enjoyed a close relationship with Thomas, although she had seen him on only two occasions in the last eight years. She intended to take Thomas to New York, to place him in the hospital where she worked and to submit him to treatment by the physician who had cared for Thomas' diabetes in his youth. The only other evidence at all favorable to Willett suggests that Thomas was incompetent at the time of his marriage. There is no indication, however, that Nancy arranged for the marriage out of any ulterior motives deleterious to Thomas' recovery or best interests. It appears that Nancy decided they should be married after a doctor suggested that she would receive more attention and respect from the staff of the hospital where Thomas was confined.[8]

The other evidence presented, including the uncontradicted testimony of three doctors, indicates that Thomas made excellent progress toward recovery from his illness while in the environment in which he was at the time of the hearing. It appears that immediately after his stroke Thomas was completely incapacitated and uncooperative. He was kept in a locked hospital ward until the end of April 1974. Thereafter, with

---

[7]Nothing which will be stated hereafter is intended to limit the court in any further proceedings in the exercise of its power, should it choose to do so, to reopen this case for the purpose of receiving further evidence on the issue of Thomas' best interest, particularly in view of the long period of time which has elapsed since the original hearing in these proceedings.

[8]Counsel for Willett has also argued that Nancy may have married him and now seeks to be his guardian so as to obtain the money he receives because of his disabilities. Thomas was receiving $235 a month as aid to a disabled person and Nancy was receiving $400 a month from the San Francisco Social Services Department, having been hired as an attendant to care for Thomas at home. There is no evidence whatsoever to support counsel's allegations and no inference of improper motive can reasonably be drawn from the facts stated. In order to care for Thomas, Nancy had to give up employment which brought her $500 a month and all sums received by Thomas were applied to his care and livelihood. Thomas has no other estate.

Nancy's assistance, Thomas was provided needed impetus to recover. She took him in a wheelchair both around the hospital and on the outside on daily passes; during this time she helped him to walk again. As a result Thomas became more cooperative and aware until he was finally discharged on June 20, 1974, with the note that he had made remarkable improvement since his admission. At that point Nancy, who had been trained and had acquired experience in organizing rehabilitation programs, coordinated a program of daily exercise, occasional social activity, personal hygiene and health care. In this program she was assisted by friends, a psychiatrist, a family physician, a public health nurse and a physical therapist. The psychiatrist testified that Thomas was living in an extremely supportive home environment with his wife and friends who were highly motivated to help him recover. He also indicated that the best treatment for Thomas was a normal home environment. Thomas' personal doctor testified that Thomas was much more responsive than he had been in the hospital, and had shown definite progress in learning to walk and care for himself. In addition, he stated that Thomas' diabetes, which had been difficult to control in the hospital, had improved significantly. In sum, the evidence showed that with the help of his wife and community Thomas was proceeding toward regaining his health and competency.

We have already stated that the Probate Code provides no explicit order of preference in the selection of a guardian. While kinship is a factor to be considered in determining the best interest of the incompetent, our courts have readily upheld the appointment of strangers. (See, e.g., *Guardianship of Mosier, supra,* 246 Cal.App.2d 164.) Where there is estrangement or, as in the instant case, a long period of separation and infrequent communication, blood relationship necessarily diminishes in importance. Furthermore, in this case there was the significant factor of the nonresidence of the appointee. As already noted, a nonresident guardian of an incompetent may be appointed (*In re Guardianship of Boutz, supra,* 24 Cal.App.2d 644, 647), although a resident guardian is preferred "unless some very strong reason [for the appointment of a nonresident] is made to appear." (*Guardianship of Mosier, supra,* 246 Cal.App.2d 164, 177; *Estate of Rosin, supra,* 226 Cal.App.2d 166, 172; *In re Guardianship of Boutz, supra,* 24 Cal.App.2d 644, 647.) It was therefore incumbent upon Willett to present evidence clearly demonstrating that it would be in Thomas' best interest to remove him to New York, particularly in view of the fact that his long residency in California prior to his illness suggests that he might have a strong preference to remain with his friends in a familiar environment.

Applying these considerations to the evidence presented, we are compelled to conclude that there was insufficient evidence to support a finding that it would be in Thomas' best interest to appoint his mother guardian, had such a finding been made. The only real evidence presented supporting Willett's application for appointment was the fact that she was his mother and intended to provide him with medical care. That is simply not enough to justify removing him from his wife and friends and the successful program of rehabilitation that he is pursuing. Accordingly, we must conclude that the order appointing Willett guardian must be reversed not only because of the trial court's failure to make a finding on a material issue, but also because, assuming such a finding had been made, it would not have been supported by substantial evidence.

The order appointing guardian is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.