[Civ. No. 4156. Fourth Dist. Nov. 29, 1950.]

MARY ANN ORR, Appellant, v. JOHN H. KIRK et al., Respondents.

C. E. Crowley for Appellant.

Robert G. Beloud for Respondents.

GRIFFIN, J.—Action for declaratory relief and injunction. In 1919, plaintiff's predecessor in interest, Mr. Mann, owned and lived in a house located on a 4-acre tract of land in Ontario. The title to the property, as a whole, passed from Mann to Mr. and Mrs. Gist in 1933, who sold the east half of

their land to defendants' predecessors in interest and retained that property now owned by the plaintiff. At that time and prior thereto there was a "U" shaped driveway commencing at "A" Street and running northerly along the west side of plaintiff's house. It then led around to the rear of her house and returned thence southerly to "A" Street, traversing a portion of what is now defendants' driveway, located on their property.

There is no claim of reservation of easement over defendants' land in the deed severing the property. Plaintiff took title to the west one-half of the tract in April, 1937. At that time there was a garage situated about 250 feet north of the "A" Street opening of defendants' driveway which encroached about 22 inches onto plaintiff's property. The east one-half was then owned by one Maud Logue. It was sold by her in 1940, to one Henier, who occupied it for about one year and then sold it to one Harrington, who occupied it until May 15, 1946, at which time defendants took title and moved onto it. During Harrington's occupancy the garage was removed. Defendants extended their driveway through to the north end of their tract to reach a trailer court they established there. A row of large trees were growing on each side of this particular driveway, and until the spring of 1948, the parties to this action apparently did not know the exact location of their common boundary line.

In addition to the use of the driveway located on plaintiff's own property, she and her predecessors, as a matter of convenience, also used the portion of the "U" shaped driveway found to be located on defendants' property. After a survey, defendants, in March, 1948, erected a fence along the property line dividing plaintiff's and defendants' property, which line followed generally the westerly row of trees.

It is defendants' argument that the evidence shows that any use of the property owned by the defendants or their predecessors, by the plaintiff or her predecessors, after the severance of the parcels by the last common owners (the Gists) was with the permission of the respective owners and occupants of the defendants' parcel of land and was allowed as an act of neighborly accommodation, and that the only use that plaintiff made of defendants' property since the erection of the fence was by force. It is claimed by the defendants that plaintiff is not entitled to an easement over the defendants' land on the theory of (a) necessity; (b) prescription; or (c) implication.

Plaintiff argues that under the evidence and cases cited, a transfer of real property passes all easements attached thereto, and creates in favor of the transferor thereof an easement to use that property in the same manner and to the same extent as such property was obviously and permanently used at the time when the transfer was agreed upon or completed, and that an easement by implication arose under the law and the facts established, citing *Cave* v. *Crafts*, 53 Cal. 135, 139; Civ. Code secs. 662 and 1084; 17 Am.Jur. 933, sec. 12; *Fristoe* v. *Drapeau*, 91 A.C.A. 1, 204 P.2d 336 (hearing granted, see, 35 Cal.2d 5 [215 P.2d 729]).

■ The elements necessary to create a ''quasi easement'' or grant by implication, upon severance of unity of ownership in an estate, are: (1) a separation of title (which implies unity of ownership at some former time as the foundation of the right); (2) necessity that before separation takes place the use which gives rise to the easement shall be so long continued and obvious as to show it was meant to be permanent; and (3) the easement must be reasonably necessary to the beneficial enjoyment of the land granted. (*Fristoe* v. *Drapeau*, *supra.*) ■ The law does not favor the implication of easements. ■ Such implication can only be made in connection with a conveyance, and in view of the rule that a conveyance is to be construed against the grantor, the court will imply an easement in favor of the grantee more easily than it will imply an easement in favor of a grantor. ■ Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain an easement by implication. In order to determine the intent, the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted. (28 C.J.S. p. 686, § 30.) The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances. The effect of section 806 of the Civil Code is to establish intent as the criterion, and this is in accord with the rationale of the rules governing easements by implication. ■ The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. (*Fristoe* v. *Drapeau*, *supra.*) In that case, relied upon by plaintiff, the *grantee*, rather than the *grantor* was relying

upon the implied easement and there was a factual finding of the trial court that all elements of such a grant of easement had been established. Here there is a factual finding against such a grant. To abide by plaintiff's contention this court would be compelled to hold that notwithstanding such a finding, the facts show, *as a matter of law,* that plaintiff was entitled to such an easement.

Here, the court found as true that there exists a private driveway on the west side of the defendants' land varying in width from 13 to 20 feet, extending north from "A" Street, which leads to a trailer park situated on the defendants' property; that a garage, for some years prior to its removal in 1945, formed the northern limit of the driveway on the defendants' property at a point approximately 250 feet north of "A" Street; that while the garage was so situated there was a roadway entirely on the plaintiff's property extending "north from such garage to a point 200 feet south of the northerly line" of plaintiff's land; that the Gists, owners of the property at the time the severance was effected, retained that portion of the property now owned by the plaintiff, and after the severance discontinued using the portion of the driveway located on the defendants' land. It then found as true that after the plaintiff and her husband acquired title to and took possession of the property now owned by plaintiff she and her husband occasionally used that portion of the driveway on the defendants' property which had previously formed the easterly part of the "U" shaped driveway above described, but found that their use of the driveway on the defendants' property was always with the consent and permission, as an act of neighborly kindness, of the owners and occupants of the land owned by the defendants until the month of March, 1948, when the defendants built a fence on their property about six inches east of the common boundary of the two parcels of land; that plaintiff has a means of ingress and egress to and from her property without resort to the use of any portion of defendants' property; that since the erection of the fence on defendants' property plaintiff has *from time to time* cut the fence and forcibly entered upon the land of the defendants without the defendants' permission and against their will. It then concluded that plaintiff has no easement or right to the easement claimed, and enjoined her from trespassing. Judgment was entered accordingly.

The only question on appeal is the sufficiency of the evidence to support the findings and judgment.

Mr. Orr testified that he was acquainted with the Orr tract since 1933, and that Mrs. Gist was then living on it; that he saw it every two or three months until he purchased it in 1937; that it remained in about the same condition all the time; that the dirt roadway involved (about 20 feet wide) extended about 450 feet north from ''A'' Street; that after he lived there he traveled it about every day until about two years ago; that he did some road work upon it; that the tenant of the Kirk property equally used it; that a chicken house or shed extended across the rear of the Orr property, the back of which was about 6 feet from the roadway and opened upon it; that the back end of the Orr property was planted to trees and grapes; that they used the north end of the roadway to cultivate and harvest the fruit from the trees and vines; that there was no other road available to them for this purpose. Another witness testified about the condition of the ''U'' shaped driveway since the year 1919, and said that it was used by Orr and also by Mr. Mann when he owned the entire tract.

Mrs. Orr, in a hearing on the issuance of an injunction, testified, which testimony is in evidence here by way of impeachment, in answer to a question regarding the use of the driveway:

''You think you had his (Mr. Hiner's) permission anyway to go over there because he kept quiet? A. We were neighbors. . . . We knew it belonged to Mr. Hiner. . . . Q. You weren't using it because you thought it was your roadway? A. We used it because we thought it was a road and a way to get in and it was the way to get into our place. Q. You thought it was your roadway? A. No, we didn't think it was our roadway. Q. You didn't think it was a public roadway? A. No. . . . Q. You felt the reason you were using the roadway was because you thought it was a common roadway and because you had permission of the owner to use it, is that right? . . . A. Yes.''

She then testified that she tore the fence down to enable her to get her tractor to the rear of her lot so she could fertilize the trees; that she walked along beside her husband who was driving the tractor, with a big club in her hand because Mr. Kirk knocked her husband off of a tractor on a former occasion.

Defendant Mr. Kirk testified that he did not make any objection to the Orrs using the driveway at first because the Orrs did not come in and out very often; that they seldom used it and the only reason Orr used it was because it was

more convenient than his own driveway and because he would not have to back up his car to go out; that he wanted to be neighborly with them; that they were there in the country district and each engaged in the chicken business; that plaintiff seldom used defendant's driveway; that after the trailer court was built and the properties were built up, about 100 people lived in them; that just before the fence was built Mrs. Orr complained about children crossing her property; that she said she was going to locate the property line and erect a fence; that they did not know where the line was; that he told her that he would be a good neighbor and pay for half of the fence; that he erected the fence a few inches east of the surveyed property line; that the first time he knew plaintiff claimed any right to use the driveway was when he had the fence about two-thirds completed; that he was then served with the complaint in this action.

One witness then testified that she managed the Kirk property for Maud Logue when she owned it; that at that time there was a garage built across the driveway in dispute at the location indicated; that there was no driveway beyond and back of the garage and that plaintiff had planted a row of grapes there; that she showed plaintiff where the line was and told her she had planted the vines on the Logue property; that they were neighborly with the plaintiff and that they had no conversation to the effect that plaintiff could or could not use the driveway; that she let plaintiff use it "as a neighborly accommodation."

Although the action here seeks a declaration of the rights of the parties, by the very nature of the proceeding, it is plaintiff who is seeking to establish the fact that she is entitled to the easement which she claims. The burden of establishing this fact is upon her. (*Smith* v. *Skrbek*, 71 Cal.App.2d 351, 358 [162 P.2d 674].) The trial court, in effect, found that she failed to furnish sufficient proof of that fact.

■ The contention that plaintiff had a right-of-way by virtue of necessity because she had no access to the rear of the tract owned by her is without merit. It may be true that access may have been obtained to that part of the tract more easily by going upon defendants' land. However, this is not the test. By the removal of a few trees or a portion of plaintiff's chicken shed, access to that portion of plaintiff's property could be reasonably accomplished.

In *Lapique* v. *Morrison*, 29 Cal.App. 136 [154 P. 881], it was held that a way of necessity cannot be established except

in a case of strict necessity, and only where one cannot get to his property through his own land. It is immaterial that the roadway on defendants' land may have been a more convenient way for plaintiff to secure access to her property. (*Smith* v. *Skrbek, supra.*)

The question of the intent of the original grantor and grantee was a question for the determination of the trier of facts. It was said in Restatement of the Law, Property, Div. V Servitudes, p. 2979, section 476, comment c:

"In construing conveyances doubts are resolved in favor of the conveyee and against the conveyor. To a greater extent than is true of the conveyee the conveyor controls both the language of the conveyance and the circumstances under which it is made and has the power to make the language of the conveyance express the intentions of the parties. To the extent to which this is true his failure to make it do so is held to operate to his disadvantage rather than to the disadvantage of the conveyee. What is true in construing the language of a conveyance is likewise true in drawing inferences from the circumstances under which the conveyance was made. Accordingly, circumstances which may be sufficient to imply the creation of an easement in favor of a conveyee may not be sufficient to imply the creation of one in favor of the conveyor."

Regardless of any inferences that may have arisen, the common grantor (Gist) and his grantee, at the time of severance may have intended no easement over defendants' property because, after the severance, each of the parcels had its own private driveway as a means of ingress and egress, and the entire holding was divided into two parcels of equal frontage on the public highway. In addition, there is some evidence that the subsequent use of the strip herein in question was only permissive and was only a neighborly act of convenience. There is sufficient evidence to support the findings and judgment of the trial court.

The attempted appeal from the order denying a new trial is dismissed. (*Bassi* v. *Bassi*, 89 Cal.App.2d 886 [202 P.2d 96].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.