[Civ. No. 52450. Second Dist., Div. Four. Jan. 16, 1979.]

SIERRA SCREW PRODUCTS et al., Plaintiffs and Respondents, v. AZUSA GREENS, INC., et al., Defendants and Appellants.

360

**COUNSEL**

Richards, Watson, Dreyfuss & Gershon and Glenn R. Watson for Defendants and Appellants.

Monteleone & McCrory, Patrick J. Duffy III and Michael F. Minchella for Plaintiffs and Respondents.

**OPINION**

**JEFFERSON (Bernard), J.**—Defendants appeal from a mandatory injunction rendered against them following a court trial. In a first amended complaint plaintiffs set forth three causes of action. The first alleged a nuisance, the second a trespass and the third an action based upon negligence. Defendants are the owners and operators of a public golf course in the City of Azusa. In 1969, plaintiff Sierra Screw Products purchased from defendants a portion of undeveloped land adjoining the golf course and thereafter constructed thereon buildings for industrial use, including offices and parking facilities. Plaintiffs Anthony Manufacturing Corporation, Foothill Sales and Thermal Hydraulics Corporation became lessees of portions of the Sierra property.

Plaintiffs alleged that golf balls were hit from defendants' golf course onto plaintiffs' property, striking several of plaintiffs' employees, damaging their parked automobiles and breaking windows. This use of defendants' property was alleged to constitute a nuisance within the meaning of Civil Code section 3479. Plaintiffs sought damages and injunctive relief. Defendants' answer denied the allegations of the complaint and set forth affirmative defenses of an accord and satisfaction by reason of the written contract of purchase, and assumption of risk. The trial court found in favor of plaintiffs on the nuisance cause of action only, denied damages but ordered defendants to redesign and reconstruct the golf course holes adjacent to plaintiffs' property to the extent necessary to abate the private nuisance.

I

*The Factual Background and the
Trial Court's Conclusions*

In 1969, Sierra purchased from defendants approximately twenty-three acres of undeveloped land adjacent to the fairways of the third and fourth holes of the golf course which had been operating for about five years. At the time of purchase there was no fencing or other obstruction between these two fairways and the purchased property.

One term of the contract of sale provided: "Upon written request of Buyer within fifty (50) months after close of escrow, Sellers, without cost to Buyer, (1) will plant 15 gallon size Canary Island pines at 20 feet intervals in the golf course along the southerly line of said land, and (2) will provide up to 200 lineal feet of 30 foot high chain link type screening on the golf course line at points designated by Buyer on the southerly or westerly sides of said land."

By 1971, plaintiff Sierra's building was completed and occupied by employees. Shortly thereafter, Sierra received reports of golf balls striking automobiles of employees parked on the premises. At Sierra's request, defendants planted the pine trees. Sierra constructed approximately 880 feet of fencing bordering on the fairways of the third and fourth golf course holes. This fencing included 250 lineal feet of 30-foot high fence, 200 lineal feet of 20-foot high fence and 430 feet of 6-foot high fence. At Sierra's request, defendants paid to Sierra the proportionate cost of 200 feet of the 30-foot fence. The court found that Sierra "made all determinations as to the location, length, height and design of all the chain link fence so constructed, including the 200 lineal feet of 30 foot high fence paid for by defendant."

One of the trial court's findings was finding IX as follows: "Between August 1971, and the date of trial, innumerable golf balls have entered plaintiffs' property from the adjacent third and fourth fairways causing damage to the automobiles of plaintiffs' employees, and on occasion personal injuries to plaintiffs' employees struck by golf balls. As a result of such golf ball intrusions plaintiffs instructed their employees to wear hard hats when working out doors in the area and moved a designated lunch or refreshment place from the west to the east side of the building."

In finding X the trial court stated: "Intrusion of golf balls onto plaintiffs' property from the third and fourth fairways is permitted by the inadequency [sic] of the fencing along the third and fourth fairways. The present design of the third and fourth fairways tends to create a danger of personal injury and property damage to the users of plaintiffs' property including employees, visitors, and business invitees by reason of their relatively narrow widths and the established target angles between the existing tees and greens."

As a conclusion of law, the court stated: "The present operation of the third and fourth fairways of defendants' golf course constitutes the

commission of a private nuisance against plaintiffs and their property interests in their property. The present operation of the sixth fairway does not constitute a private nuisance against plaintiffs."

Another key conclusion of law was the following: "Plaintiffs are entitled to the issuance of a mandatory injunction on the first cause of action in plaintiffs' amended complaint, directing the defendants on or before November 1, 1976 to redesign and reconstruct the third and fourth holes of the existing golf course in such a manner as to minimize the intrusion of golf balls onto the plaintiffs' adjoining property and upon completion thereof to file with the Court a copy of the revised design together with evidence of completion thereof."

The trial court's judgment followed the terms of paragraph V of the conclusions of law. In the judgment the trial court reserved jurisdiction to review the effectiveness of the revised design and construction in eliminating the nuisance of the golf-ball invasion onto plaintiffs' property.

## II

### Contentions on Appeal

Defendants make the following contentions in seeking a reversal of the judgment: (1) In view of the zoning of the golf course property, the golf course may not be considered a private nuisance as a matter of law. (2) The rights and obligations of the parties with respect to screening to protect against intrusion by golf balls were determined by the written contract of the parties. (3) Defendants possess an implied easement to operate the golf course and cause golf balls to land on plaintiffs' property. (4) The findings are inadequate to support the judgment.

## III

### The Effect of Zoning on the Question of Whether Defendants' Golf Course May Be Held to Be a Private Nuisance

Defendants assert that, since their property on which the golf course was located was zoned for the operation of a golf course, it cannot be held to constitute a private nuisance. Defendants claim, as a matter of

law, that Code of Civil Procedure section 731a precludes plaintiffs from obtaining injunctive relief against a commercial enterprise operating in an area zoned for that particular activity. Section 731a provides in pertinent part: "Whenever any city, city and county, or county shall have established zones or districts under authority of law wherein certain manufacturing or commercial or airport uses are expressly permitted, . . . no person or persons, firm or corporation shall be enjoined or restrained by the injunctive process from the reasonable and necessary operation in any such industrial or commercial zone or airport of any use expressly permitted therein, nor shall such use be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation."

There is no dispute about defendants' property being zoned for the operation of a golf course. The trial court found that a conditional use permit was issued in 1963 expressly permitting the operation of defendants' golf course and that such permit remained in full force and effect.

The general rule relating to the effect of Code of Civil Procedure section 731a is stated in *Christopher v. Jones* (1964) 231 Cal.App.2d 408, 411 [41 Cal.Rptr. 829], as follows: "Section 731a denies injunctive relief to private persons whenever a commercial enterprise operates within a legally defined area under an express permit *as long as the enterprise does not employ unnecessary and injurious methods of operation.*" (Italics added.)

Defendants rely upon *North Side etc. Assn. v. Hillside etc. Park* (1945) 70 Cal.App.2d 609 [161 P.2d 618], for their assertion that Code of Civil Procedure section 731a constitutes an automatic bar to plaintiffs' obtaining any relief against defendants' operation of the golf course. In *North Side,* the court held that plaintiff made no showing of being entitled to relief under section 731a because the plaintiff simply alleged that the defendants had been illegally granted a permit to operate a cemetery. A judgment on the pleadings against the plaintiff was upheld because plaintiff's complaint contained "no allegation that respondents threaten to or will use the property in any but a 'reasonable and necessary' manner, as cemeteries are ordinarily conducted, . . ." (*North Side, supra,* 70 Cal.App.2d 609, 619.)

Because of the nature of the plaintiff's pleading in *North Side,* it provides no assistance to the view of defendants before us that, by

invoking Code of Civil Procedure section 731a, they can "avoid the application of the general rule that the mere fact that a commercial enterprise is conducting its business in a district zoned for its type of activity does *not* justify the maintenance by it of a nuisance." (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 130 [99 Cal.Rptr. 350].) (Italics added.)

In the case at bench, it is clear that plaintiffs would not be entitled to injunctive relief solely upon allegations and proof that defendants were operating a golf course—an activity sanctioned by the City of Azusa's conditional use permit. As the court in *Gelfand* v. *O'Haver* (1948) 33 Cal.2d 218, 220 [200 P.2d 790], aptly observed: "[T]he manifest purport of the adoption of section 731a was to eliminate injunctive relief where the business is operated in its appropriate zone and the only showing is an injury and nuisance to the plaintiff in such operation. He must now show more, namely, that the defendant employed 'unnecessary and injurious methods' in the operation of the business."

The *Gelfand* court points out that a plaintiff is not limited to any particular type of evidence in establishing that a defendant employed "unnecessary and injurious methods" in the operation of the business. Evidence that a defendant failed to pursue methods customarily and usually employed in other similar businesses in the vicinity is simply one type of evidence that a plaintiff may introduce. Thus, the *Gelfand* court approved of language found in *Hannum* v. *Gruber* (1943) 346 Pa. 417 [31 A.2d 99], dealing with a plant emitting smoke, fumes and odors. " 'If *devices* or *more efficient management* which would reduce the smoke, odors, gases, smudge and noises and vibrations issuing from its plant are available to the defendant at a reasonable expense, it is the duty of the defendant to secure such devices or management, and, if it fails to do so, the smoke, noises, etc., emitting from its plant may be regarded as unnecessary and unreasonable.' " (*Gelfand, supra,* 33 Cal.2d 218, 221.) (Italics added.)

Defendants assert that if plaintiffs are to come within the exception of Code of Civil Procedure section 731a, there must be a finding by the trial court that defendants employed "unnecessary and injurious methods of operation" in the maintenance of their golf course. We will consider this matter subsequently in connection with defendants' attack upon the findings generally.

## IV

### *Do the Provisions of the Written Contract of Sale With Respect to Fencing Between the Golf Course and Plaintiffs' Property Preclude Recovery by Plaintiffs on Any Nuisance Theory?*

█ It is the position of defendants that the provisions in the sales contract dealing with fencing between defendants' golf course and plaintiffs' property determine the rights of plaintiffs insofar as there is any intrusion onto plaintiffs' property of golf balls from defendants' golf course.

As we pointed out previously, the contract of sale provided that, upon request of plaintiff-buyer, defendant-sellers would provide, at their expense, up to 200 lineal feet of 30-foot high chain link type screening on the golf course line at points designated by the buyer. There is no doubt that this fencing was designed to protect plaintiffs' property from golf balls struck from the golf course. But did such provisions measure the *full* extent of plaintiffs' rights and defendants' obligations? Defendants argue that the agreement is clear on its face and that extrinsic evidence was not needed for interpretation.

This face-of-the-document test to exclude the admissibility of extrinsic evidence was rejected in cases such as *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], and *Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]. The trial court, therefore, properly admitted extrinsic evidence on the question of what the parties intended by the fencing provisions of the contract of sale. The trial court concluded that the parties did not intend that plaintiffs would have no recourse against defendants if the 200 lineal feet of 30-foot high fencing proved inadequate to protect plaintiffs' property from golf balls propelled from the golf course. The trial judge was *not required* to interpret the fencing provisions in the contract as advanced by defendants—that defendants' responsibility toward plaintiffs' property was limited to providing the 200 lineal feet of 30-foot high fencing, irrespective of whether such fencing proved inadequate at all times in the future to protect plaintiffs' property.

The extrinsic evidence introduced by plaintiffs supports finding VII by the trial court: "In the negotiations for purchase or in the purchase

contract, plaintiffs did not agree to assume the risk of future golf balls entering the property they offered to purchase nor did the plaintiffs expressly or otherwise agree to waive any right to complain of future nuisances which the intrusion of golf balls might cause." The case at bench is not unlike that of *Delta Dynamics, supra*, 69 Cal.2d 525, in which a termination clause in a contract was held subject to being interpreted in two reasonable fashions—either as an *exclusive* remedy or as a *nonexclusive* remedy.

V

*The Question of Whether the Sale by Defendants*
*to Plaintiff Sierra of a Portion of Defendants'*
*Property Created an Implied Easement of Golf-*
*ball Intrusion Onto Sierra's Property From*
*Defendants' Golf Course*

Defendants argue that, since plaintiff *Sierra*, at the time of negotiations for the purchase of the property adjacent to the golf course, observed and knew that golf balls from the golf course landed on the property being purchased, an implied easement against Sierra's property arose in favor of the golf course—an easement for the intrusion of golf balls onto plaintiff Sierra's property.

It is pointed out in *Orr* v. *Kirk* (1950) 100 Cal.App.2d 678, 681 [224 P.2d 71], that "[t]he law does not favor the implication of easements. . . . Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must *clearly* appear in order to sustain an easement by implication." (Italics added.) Furthermore, "in view of the rule that a conveyance is to be construed against the grantor, the court will imply an easement in favor of the grantee more easily than it will imply an easement in favor of a grantor." (*Id.,* at p. 681.) The principle is well established that "[t]he purpose of the doctrine of implied easements is to give effect to the *actual intent* of the parties as shown by all the facts and circumstances." (*Fristoe* v. *Drapeau* (1950) 35 Cal.2d 5, 8 [215 P.2d 729].) (Italics added.)

Defendants assert that all the elements necessary for an implied easement in favor of defendants' golf course to have golf balls go upon the land of plaintiffs are present here: (1) a unity of ownership before sale of part of the property to plaintiff Sierra; (2) the dominant parcel—the golf course—was used for such a long and continuous time as a golf

course to establish it was meant to be permanent; and (3) the easement is reasonably necessary to the beneficial enjoyment of defendants' land as a golf course. (See *Piazza* v. *Schaefer* (1967) 255 Cal.App.2d 328, 332 [63 Cal.Rptr. 246]; *Fischer* v. *Hendler* (1942) 49 Cal.App.2d 319, 322 [121 P.2d 792].)

■ Viewed in light of the rules of law set forth in *Orr* and *Fristoe,* the evidence introduced in the instant case was not such as to require the trial judge to find, as a matter of law, that there existed in favor of defendants an implied easement for golf balls to land on the property sold to plaintiff Sierra, arising from the circumstances of the sale from defendants to plaintiff Sierra. The provisions in the contract relating to fencing are sufficient to negate a required finding that the parties had a *clear intent* for defendants to have an easement for their golf balls to fall on the land of plaintiffs. The trial court's finding VII, previously referred to, is a finding against any implied easement and this finding has ample support in the evidence.

VI

*The Question of Whether the Findings Are
Adequate to Support the Judgment*

Defendants attack the findings of fact as being inadequate to support the judgment. The thrust of this attack upon the findings is directed to the thesis that the trial court failed to make findings on material issues necessary to support the judgment, and that this failure was accentuated by the trial court's refusal to make findings specifically requested by defendants.

■ The rules of law regarding the necessity of adequate findings are well settled. "Where findings are required, they must be set forth with a degree of specificity which fairly discloses the court's determination of all issues of fact material to the judgment in the case." (*Guardianship of Brown* (1976) 16 Cal.3d 326, 332-333 [128 Cal.Rptr. 10, 546 P.2d 298].) This rule of law is derived from the specific provisions of Code of Civil Procedure section 632 and California Rules of Court, rule 232(e).[1] ■ It follows, therefore, that, "unless waived, express findings

---

[1]Code of Civil Procedure section 632 provides, in relevant part: "Where findings are required, they shall fairly disclose the court's determination of all issues of fact in the case."

California Rules of Court, rule 232(e) provides: "Findings shall fairly disclose the court's determination of all issues of fact material to the judgment in the case and shall be

are required on all material issues raised by the pleadings and the evidence, and failure to find on a material issue will ordinarily constitute reversible error." (*Guardianship of Brown, supra,* 16 Cal.3d 326, 333.) However, it is equally well settled "that if findings are made upon issues which determine the cause and uphold the judgment, other issues become immaterial and a failure to find thereon does not constitute prejudicial error." (*Santoro* v. *Carbone* (1972) 22 Cal.App.3d 721, 730 [99 Cal.Rptr. 488].) It is settled law that a court is "not required to incorporate findings of fact proposed by [a party] which were contrary to or inconsistent with findings which the court did make." (*Placentia Fire Fighters* v. *City of Placentia* (1976) 57 Cal.App.3d 9, 27 [127 Cal.Rptr. 126]; see also *Security Pacific Nat. Bank* v. *Chess* (1976) 58 Cal.App.3d 555, 567 [129 Cal.Rptr. 852].)

Defendants argue that three material findings were not made. One omission, assert defendants, was a failure to find that the provisions about fencing in the contract limited defendants' obligations with respect to golf balls going upon plaintiffs' property. But the trial court did make a finding on this issue—finding VII. It was contrary to defendants' position but supported by substantial evidence as we have pointed out previously herein.

■ A second omission, assert defendants, is a failure to find on an issue specifically requested by defendant: "Whether plaintiffs could prevent entry of golf balls onto their property by construction of a 40-foot high fence along plaintiffs' westerly and southerly boundaries adjacent to No. 3 and No. 4 holes." This is a finding requested on an immaterial issue. This request assumes that *plaintiffs* had an obligation to preclude the intrusion onto plaintiffs' property of golf balls from defendants' property. Finding VII, previously referred to herein, is a finding that plaintiffs did *not* assume any such obligation by either contract or waiver.

■ The third omission asserted is that the trial court made no finding that defendants utilized "unnecessary and injurious methods of operation" as required by Code of Civil Procedure section 731a to entitle plaintiffs to injunctive relief under the cause of action for a private nuisance. This issue is covered and disposed of by finding X. Finding X recites: "Intrusion of golf balls onto plaintiffs' property from the third and fourth fairways is permitted by the inadequency [*sic*] of the fencing along the third and fourth fairways. The present design of the third and

concisely and chronologically stated whenever practicable. Findings shall not refer merely to the truth or falsity of allegations contained in the pleadings."

fourth fairways tends to create a danger of personal injury and property damage to the users of plaintiffs' property including employees, visitors, and business invitees by reason of their relatively narrow widths and the established target angles between the existing tees and greens."

Finally, defendants assert that there is a conflict or inconsistency in the findings relating to whether the cause of the nuisance is simply inadequate fencing, or improper design of the fairways to the third and fourth golf holes adjacent to plaintiffs' property.

Defendants claim that finding X presents an inconsistency which is of significance because of the judgment. It is the defendants' contention that if the nuisance causing golf balls to be propelled onto plaintiffs' property results from inadequacy of fencing, the judgment should simply have required defendants to remedy the situation through adequate fencing such as increasing the 30-foot fencing to 40-foot fencing, rather than requiring defendants to redesign and reconstruct the third and fourth holes of their golf course which would logically follow from the second and third sentences of finding X which place the blame on improper design of the third and fourth fairways.

We find no inconsistency in finding X which identifies the two conditions which contributed to the injury to plaintiffs. There was expert testimony to the effect that raising the height of fencing to 40 feet would eliminate the risk of golf balls going onto plaintiffs' property *except in rare cases.* But other expert testimony indicated that a redesign of the fairways to the two holes in issue was necessary to reduce the risk to the exceptional case. We interpret the trial court's finding X as an acceptance by the trial judge of the expert testimony to the effect that only a redesign of the fairways would give to plaintiffs adequate protection, while recognizing, however, that inadequate fencing alone caused many golf balls to reach plaintiffs' property. We deem this interpretation of finding X reasonable and without ambiguity or inconsistency.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.