[Civ. No. 18090. Fourth Dist., Div. One. Feb. 26, 1980.]

HELEN KYTASTY, Plaintiff and Appellant, v.
M. F. GODWIN et al., Defendants and Respondents.

---

---

COUNSEL

Hillyer & Irwin and Dale R. Larabee for Plaintiff and Appellant.

Romney, Andersen & Allen, Clyde A. Romney, James M. Allen, Scales, Patton, Ellsworth & Corbett, Luke R. Corbett and Ralph E. Hughes for Defendants and Respondents.

---

OPINION

**COLOGNE, Acting P. J.**—Helen Kytasty brought this action to quiet title to her property over which the defendants claimed an easement. In the first trial, the court awarded Kytasty judgment and ordered defendant M. F. Godwin to convey title to the subject parcel free and clear of easements. This judgment was modified granting the 60-foot easement, but a new trial was ordered because, among other reasons, indispensable parties were not before the court. After the retrial, the trial court awarded judgment confirming a 60-foot easement on Kytasty's property in favor of certain of the defendants, describing the easement by metes and bounds. Kytasty appeals.

At the outset, we should state an often forgotten rule that our court is bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party and in support of the judgment (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, p. 4236).

On November 1, 1968, M. F. Godwin, doing business as M. F. Godwin Land Company (Land Co.)[1] purchased 320 acres of land in rural San Diego County from Aslesen and Maun. The unpaid balance of the purchase price was secured by three separate deeds of trust on portions of the property. Each deed of trust described a separate portion of the 320-acre parcel and each contained a provision reserving to the beneficiaries (Aslesen and Maun) a right to a 60-foot road easement from Old Coach Road to the center of a creek bed and then "in a generally northeasterly direction along said creek bed" through the property subject of the purchase money trust deed. These deeds of trust were duly recorded.

On the same day it purchased the property, Land Co. sold the northerly 160 acres to Wesley H. Mathews, a practicing criminal attorney, and his wife Nancy A. Mathews. When Mr. and Mrs. Mathews visited the property in the spring and summer of 1968 before the purchase, they reached it using Old Coach Road, a dedicated county dirt road, and then by means of "a very rutted dirt road" drove to their parcel. The rutted dirt road meandered northeasterly from the county road following "in close proximity" a creek bed. The Mathews were able to drive their sedan-type passenger car on this route and while it was apparently narrow and travel was made difficult by boulders, trees and brush, it was not impossible to traverse and they were able to reach the 160 acres in question. This route was the only means of access at the time.

In his discussion with George Wright, manager of the Land Co., Mathews was assured an access easement existed across the lower 160 acres. Mathews testified that when Wright referred to an access easement, he meant "[t]his rutted road that took off from Old Coach Road...." Wright testified he told Mathews that Mathews would have an access easement to the northern 160 acres.

Land Co. conveyed the northern 160 acres to Mathews by grant deed which made no reference to an easement. At the time of purchase, Mathews asked Wright, "Well, is there any problem about getting in and out?" and Wright said "No. We have got an easement through, which I understand to be an easement or access for ingress and egress." Mathews was told by Wright and (he thought) the escrow officer the language in his grant deed was "[s]ubject to a trust deed in favor

---

[1]Old Coach Financial, Inc., a California corporation, became the successor in interest to Land Co., and is referred to here as Financial.

of...Aslesen and...Maun," and it spelled out an easement for ingress and egress. We note here in passing there was no testimony Mathews saw the Aslesen and Maun trust deed itself or understood the specific terms as to the location or width, but the trial court did specifically find Wright and Mathews "intended and attempted to create an easement for ingress, egress, road and public utilities purposes" over the real property and generally along the route described in the Aslesen and Maun deed of trust.

In April and May 1969, Wright hired Dale's Tractor Service to grade the road "to get Mathews to his property." After the road grading into the Mathews property had been completed, Mathews and Wright used the improved roadway to move in equipment to drill a well, remove trees and take out sand and gravel.

In May 1969, Kytasty became interested in the 40-acre parcel owned by Land Co. and located south of the parcel purchased by Mathews. The dirt road used by Mathews ran through this parcel. Kytasty visited the property five or six times before she finally purchased it and reached it each time by way of the same rutted jeep trail that left Old Coach Road. She did not travel up the road beyond her property but knew it continued on and was passable in an automobile. She made no effort to inform herself of the history of the road or of the people using it. Kytasty executed a contract of purchase from Land Co. of the 40 acres on May 27, 1969. Her contract made no reference to any easement being reserved.

After Kytasty went into possession, Wright finished grading the road and she made no effort to stop him. She actually used the graded road herself.

On August 1, 1972, almost four years after acquiring the property and after the graded road had been completed into Mathews' property, the Mathews conveyed their interest in the 160 acres to Douglas and M. Earlene Talbot, trustees, who in turn conveyed 40 acres each to four separate limited partnerships, Old Coach Properties, Ltd. #1, Old Coach Properties, Ltd. #2, Old Coach Properties, Ltd. #3, and Old Coach Properties, Ltd. #4. The parcel transferred to Old Coach Properties, Ltd. #4 was later in turn transferred to Coach Properties, Ltd. (These limited partnerships are collectively referred to as the limited partnerships.) The grant deed from Mathews to Talbots, as well as the deeds to the limited partnerships, contained a description of the 60-foot

easement in language similar to that contained in the Aslesen and Maun deeds of trust.

When the limited partnerships sought county authority for a lot split, they were apparently told they needed easements for access. Wright, as agent of Financial, prepared, executed and caused to be recorded an easement 60 feet wide across the property of Financial (Land Co.) as well as over the property of Kytasty, even though it no longer owned the Kytasty property, had not sought her approval of the easement and had no authority to act as her agent. The right to this easement was granted to Talbots.

During the trial, the court appointed a surveyor who prepared a legal description of the centerline of the graded roadway and the judgment awarding the easement incorporated the legal description he prepared as well as the somewhat more vague and general description used previously in the deed of trust. The trial court concluded there was an implied easement for ingress and egress and, if for any reason the implied easement is not supported on appeal, there was an easement by necessity. No party was guilty of unclean hands or did any act which would estop him from asserting the rights gained here.

The note and deed of trust in favor of Aslesen and Maun has been paid off and reconveyance by the trustee has been completed. It is no longer an encumbrance on any of the parcels with which the court is concerned.

The parties concede there was no valid deed of easement over the Kytasty property. If any rights exist, they are by reason of an implied easement or easement by necessity.

Civil Code section 1104 reads: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." Thus the code creates an implied easement as an exception to the general rule that interests in real property can only be created by an express writing or by prescription (see 3 Miller & Starr, Cal. Real Estate (rev.) § 18.21, at p. 298; 1 Bowman: Ogden's Revised Cal. Real

Property Law, § 13.24 at pp. 554-555). ■ The law with regard to implied easements is not uncertain and was most amply summarized by this court in *Orr* v. *Kirk* (1950) 100 Cal.App.2d 678, at page 681 [224 P.2d 71]: "The elements necessary to create a 'quasi easement' or grant by implication, upon severance of unity of ownership in an estate, are: (1) a separation of title (which implies unity of ownership at some former time as the foundation of the right); (2) necessity that before separation takes place the use which gives rise to the easement shall be so long continued and obvious as to show it was meant to be permanent; and (3) the easement must be reasonably necessary to the beneficial enjoyment of the land granted. [Citation.] ■ The law does not favor the implication of easements. Such implication can only be made in connection with a conveyance, and in view of the rule that a conveyance is to be construed against the grantor, the court will imply an easement in favor of the grantee more easily than it will imply an easement in favor of a grantor. ■ Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain an easement by implication. In order to determine the intent, the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted. [Citation.] The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances. The effect of section 806 of the Civil Code is to establish intent as the criterion, and this is in accord with the rationale of the rules governing easements by implication. The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. [Citation.]" ■ We have no difficulty concluding there is support for the finding Mathews acquired an implied easement over Land Co.'s property for ingress and egress at the time of Mathews' purchase. The road was established by obvious and apparent permanent use and was actually used before purchase. Inquiry had been made of Wright as to whether the purchase included the right of access and Wright, as the seller's agent, assured him such a right was included.

The location of the easement is supported by substantial evidence as being from Old Coach Road, a dedicated county dirt road, easterly for a distance of about 1,000 feet, then along the creek bed to the Mathews property, all of this in the area of the existing road. The evidence,

conflicting as it was, supports the ultimate necessarily implied finding the surveyor's legal description follows with reasonable accuracy the road used by the parties during the time in question and going "along said creek bed." We are more interested in the fact the graded road followed the route of the old rutted dirt road, the location of the visible easement, rather than the route set out in the Aslesen and Maun deed of trust. The existing road was obvious to the parties and, although storms and flooding may have occasionally forced temporary relocation, there was ample evidence the route (though not its width) described by the surveyor, the grading of which was completed later after Kytasty's purchase, followed substantially the location of the original jeep trail used for many years.

Our concern, reserved for discussion later in this opinion, relates only to the width of the easement thus created.

■ We next turn to the ongoing nature of the implied easement insofar as it affects Kytasty's interest in the property she purchased.

Although Civil Code section 1104 speaks only in terms of implying an easement in favor of the grantee, the California courts have recognized an easement can burden the property when conveyed even though not mentioned in the deed. The implied easement or quasi-easement authorized by Civil Code section 1104 is reciprocal; hence, if a burden has been imposed upon a parcel of land sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude on it (*Vargas* v. *Maderos* (1923) 191 Cal. 1, 2 [214 P. 849]; *Quinlan* v. *Noble* (1888) 75 Cal. 250, 252-253 [17 P. 69]; *Rosebrook* v. *Utz* (1941) 45 Cal.App.2d 726, 729 [114 P.2d 715]; see also 3 Miller & Starr, Cal. Real Estate (rev.) § 18.27, at pp. 306-307; 1 Bowman: Ogden's Revised Cal. Real Property Law, § 13.24, p. 554). Similar conditions of knowledge apply requiring the use to be an existing known use "so long continued and obvious as to show it was meant to be permanent" (see *Orr* v. *Kirk, supra,* 100 Cal.App.2d 678, 681). "In order for an easement to arise by implication, it must be both apparent and continuous, or obvious and permanent. (Civ. Code, sec. 1104.) An easement which is apparent and continuous will pass as appurtenant without the use of the word 'appurtenances'; but if it is not apparent and continuous, it is not included in the conveyance unless the grantor uses language in his deed sufficient to create the easement *de novo.* (19 Cor. Jur. 917.) An apparent or obvious easement is one that is visible on [or

from] the servient estate." (*Swarzwald* v. *Cooley* (1940) 39 Cal.App.2d 306, 324-325 [103 P.2d 580]).[2]

In the instant case, Kytasty was well aware of the existence of the road, having used it herself. While she did not travel its full length, she knew it was passable and was thus put on notice an easement existed as a servitude on the property she was buying. We conclude the implied easement given to Mathews is a servitude on the property she acquired.

Finally, we come to the finding by the trial court the easement is 60 feet wide. This poses the only real problem to our sustaining the judgment of the trial court.

Civil Code section 806 provides "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Where the easement is acquired by an implied grant, the scope of the easement is measured by the extent the property was obviously and permanently *used* at the time when the transfer was completed (Civ. Code, § 1104). A purchaser of real property is bound to take notice of all easements or servitudes which are "apparent" upon inspection of the property (*Henrici* v. *South Feather Land etc. Co.* (1918) 177 Cal. 442, 446 [170 P. 1135]; *Rubio Cañon etc. Assoc.* v. *Everett* (1908) 154 Cal. 29, 33 [96 P. 811]). The extent of an easement by implied grant must be inferred from all of the circumstances of the case among which the existing and reasonably to be expected uses are considered (Civ. Code, § 806; *Fristoe* v. *Drapeau* (1950) 35 Cal.2d 5, 9 [215 P.2d 729]). A number of California cases have discussed the uses permitted and suggest the intent of the parties should be controlling (*Fristoe* v. *Drapeau, supra,* at p. 9). These cases must be carefully scrutinized as they refer to the kind of use made of the easement rather than the amount of property put to use—a different concept. Nevertheless, the concern of the court in any case is not to increase the burden of the easement as it respects the servient tenement (see *Joseph* v. *Ager* (1895) 108 Cal. 517, 520-521 [41 P. 422]; and see *Crimmins* v. *Gould* (1957) 149 Cal.App.2d 383, 390-392 [308 P.2d 786]).[3] The question as

---

[2]The cases dealing with constructive notice (Civ. Code, § 19) and holding a person is under a duty to investigate if he is put on notice an easement exists only refer to the inquiry that is necessary to discover the use actually being made of the servient estate (see *Johnson* v. *Cella* (1953) 122 Cal.App.2d 72, 74-75 [264 P.2d 98]). This does not mean he is obliged to learn a secret understanding not consistent with present use and relating to future uses not reasonably foreseeable under the circumstances.

[3]"'As every easement is a restriction upon the right of property of the owner of the servient tenement, no alteration can be made in the mode of enjoyment by the owner of

to the amount of property subjected to the easement, the width of the existing road or easement, is one of fact for determination by the trial court (*Kaynor* v. *Fisch* (1951) 103 Cal.App.2d 832, 838 [230 P.2d 418]).

The evidence here does not support a finding the easement used or reasonably expected for future use of the dominant tenement was 60 feet wide. Except to the extent of the language contained in the three trust deeds given by Land Co., there is no evidence of expected future development when Land Co. conveyed to Mathews. Mathews' only concern was "getting in and out," and he received assurance, in the context of the then known road, he would have an easement for ingress and egress. Any knowledge on Mathews' part of the easement's terms in the trust deeds was not established. The only visible or obvious use made of this easement at the time of the purchase by Mathews was in the nature of a single-lane, dual-rutted trail, wide enough for one vehicle and barely passable. The record does not establish the width in feet of this road either before or after grading, but it was the width of one vehicle, according to Mathews and Kytasty, which might be eight to ten feet wide.[4] The graded road as it existed and was known to Kytasty before the sale, if the width of a bulldozer blade, likely would be only slightly wider. An easement wider than approximately 12 feet, especially following a route that has been cleared of brush and trees and graded to avoid major obstruction, would not appear to be reasonable from the evidence in the record.

In the absence of additional evidence, the court would be at liberty to set the maximum width at any amount it reasonably determines is necessary to accommodate single vehicle traffic or the width of the bulldozer grading there which Kytasty reasonably knew would traverse her entire property.

Respondents contend the width is governed by the easement described in the deeds of trust executed by Land Co. at the time of acquiring the property from Aslesen and Maun. That argument is not persuasive. We note first the easement was described in the deeds of

the dominant heritage, the effect of which will be to increase such restriction. Supposing no express grant to exist, *the right must be limited by the amount of enjoyment proved to have been had*'" (*Joseph* v. *Ager, supra*, 108 Cal. 517, 520-521, quoting with approval from Gale & Whately on Easements, p. 237; italics added).

[4]The minimum width of private 2-lane highways or by-roads is 20 feet (Sts. & Hy. Code, § 1805). From this we might surmise a 10-foot wide lane is apparently a reasonable width for single vehicle traffic.

trust held by the trustee as security only and legal title to the easement was never separated from the owner of the property, Land Co. One cannot have an easement on his own property.[5] Thus, that easement created no rights unless there was a default in the obligation secured by the encumbrance applicable to the servient tenement (see *A. Hamburger & Sons, Inc.* v. *Lemboeck* (1937) 20 Cal.App.2d 565, 569 [67 P.2d 380]). While Mathews' purchase was made subject to the Aslesen and Maun deeds of trust which contained the described easement, that only means his property was subjected to prior liens of the beneficiaries in that agreement and, if there should be a default by Land Co., their rights, whatever they may be, would prevail. Mathews was not given any rights under the trust instruments, but was only subjected to the superior rights which the beneficiary might assert. Mathews knew of the trust deed, of course, and the fact there was reference to an easement in it, but the security instrument gave him no rights nor did it ever ripen into any right relative to this easement. Moreover, there was no evidence Mathews otherwise knew at the time of the purchase the location of the easement described in the deed of trust or its width when he acquired the 160 acres. He knew only the grant deed referred to the trust deed which, he was informed, spelled out a right to ingress and egress. Thus, his only concern from the record before us was that he had a right to get into the property, and he travelled only over the rutted, single-car width road. He was given assurance of an access easement and the promise was honored.

As to Kytasty's knowledge of the easement in the trust deed, the evidence was even less convincing. She was told her purchase was subject to Land Co.'s trust deed and it contained an easement. She was also told when the purchase note was paid off, the property would be reconveyed and the easement would come off. This is a true statement of the effect of the instruments and, as a matter of fact, that is what actually happened as far as the potential imposition of a lien under the trust deeds was concerned.

Kytasty was never shown the deed of trust and had no reason to look it up. A search of the records, however, would have produced nothing that would impose a burden on her property unless the Aslesen and Maun notes were permitted to go into default. The implied easement,

---

[5]Ogden calls a landowner's use of one part of his land for the benefit of another part, as described in Civil Code section 1104, a "quasi-easement," which ripens into an easement upon conveyance (1 Bowman: Ogden's Revised Cal. Real Property Law, § 13.24, p. 554; see also 3 Miller & Starr, Cal. Real Estate (rev.) § 18.27, p. 307).

however, remains because of the use obviously made. The implied easement does not depend on the recorded documents.

Having found there was an implied easement, it is unnecessary to consider the claim there was an easement by necessity as it would engender no greater rights against Kytasty's property.

■ Finally, we are called upon to grant attorneys' fees since this action was brought by Kytasty under her contract of purchase. Under Civil Code section 1717, attorneys' fees are available to the prevailing party and, as expressed by the trial court, we are unable to determine who is the prevailing party, if there is one. The judgment as well as this opinion must be considered good news and bad news to each of the parties, and in good conscience we cannot say attorneys' fees should be awarded either for the trial or for this appeal.

Judgment is reversed insofar as it provides that the width of the implied easement is 60 feet, and in all other respects the judgment is affirmed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Let each party stand his own costs on appeal.

Staniforth, J., and Wiener, J., concurred.

A petition for a rehearing was denied March 12, 1980.