**MATT LE'I, Appellant**

**v.**

**OLO LETULI, Appellee**

High Court of American Samoa
Appellate Division

AP No. 20-92

November 15, 1993

Before CANBY,* Acting Associate Justice, MUNSON,** Acting Associate Justice, VAIVAO, Associate Judge, and AFUOLA, Associate Judge.

---

* Honorable William C. Canby, Jr., Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

** Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Marianas, sitting by designation of the Secretary of the Interior.

Counsel: For Appellant, Gata E. Gurr
 No appearance entered for Appellee

MUNSON, Acting Associate Justice:

This is an appeal of a judgment of the Land and Titles Division in which that court held, among other things, that any power line poles erected to supply electrical power to Defendant/Appellant's property may constitute a continuing trespass to Plaintiff/Appellee's land if those poles are located in a certain right of way. The trial court also ordered that Appellant "remove or cause to be removed any power line poles" that occupy the right of way. Appellant argues that the trial court's conclusions with respect to the power line poles were erroneous. We agree and modify that portion of the court's Order.

## FACTS

The trial court in its Opinion and Order set forth the facts of this case in great detail. Because Appellant only questions a portion of the trial court's order, we will only recite those facts relevant to this appeal.

Appellee owned a parcel of land encompassing approximately 44 acres in a roughly triangular shape. The land was bounded on the north by a paved road, running east and west. The ocean comprised the northeast-southwest boundary, and a dirt road running south from the paved road to the ocean served as the third boundary. Appellee's residence is located at the northeast corner of his parcel in an area known as "Freddie's Beach."

In 1977, Appellee conveyed a three-acre parcel on the western edge of his property to Ethel T.W. Fujii. In 1978, Appellee conveyed two acres of land to Oliver Moors by a deed containing "grants of the land, together with all rights, easements, and appurtenances belonging or in any way incident or appertaining to the land." Order of Sept. 4, 1992, at 2. Mr. Moors' two-acre parcel was just to the north of the Fujii parcel and separated from that parcel by a 12-foot right of way. Both the Fujii and the Moors parcels were accessible via the 12-foot right of way, as well as the dirt road that formed the western boundary of Appellee's original plot.

Mr. Moors subsequently subdivided his two-acre parcel into five lots. One of those lots is at the southeastern corner of Mr. Moors parcel and is accessible only via the 12-foot right of way between the Moors and

34

Fujii parcels. On August 5, 1983, Mr. Moors sold that lot to Appellant, who intended to build a residence on the property. The deed from Mr. Moors to Appellant provided that the grant included "all rights, privileges, and easements held or enjoyed in connection with, or appurtenant to the land." Order of Sept. 24, 1992, at 3.

On February 8, 1989, Appellant and Appellee signed a document entitled "Deed of Easement for the American Samoa Power Authority ("ASPA") an easement as was "necessary for the safe maintenance and operation of electrical power and water lines on, over, under, and across the land of the Grantor described below: [handwritten] 'Self-owned land bought fr. Oliver Moors.'" The deed correctly designated ASPA as "Lessee." These designations are confusing, because the land described in the deed belonged to Appellant, and not Appellee. Nevertheless, ASPA installed power line poles along the boundary line between Appellant's land and the right of way, presumably pursuant to the February 8, 1989 deed.

In February 1991, Appellate hired an independent contractor to clear his parcel with a bulldozer to prepare the land for construction of his residence. In addition to clearing Appellant's land, the bulldozer operator also cleared a large portion of Appellee's land from Appellant's southern boundary line to the ocean, greatly improving the ocean view from Appellant's property.

On March 14, 1991, Appellee sued Appellant claiming damages for trespass due to the power poles and the bulldozing activities, and seeking an injunction to require Appellant to remove the power poles. After a two-day trial, during which the trial court visually inspected the land in question, the court issued an "Opinion and Order" on September 4, 1992. In that Order, the court found Appellant was liable for trespass as a result of the bulldozing activities in February 1991, and awarded Appellee compensatory damages of $1.00 and punitive or exemplary damages of $1,500. Appellant does not contest this finding or the amount of damages awarded.

The Court also held that an implied easement across the 12-foot right of way was created in favor of Appellant by the 1978 conveyance of the land to him form M. Moors. the court found, however, that although Appellant was entitled to the use of the 12-foot right of way for ingress and egress to his property, that right of way "is not well suited for handling both motor vehicles and power lines poles . . . ." Order of Sept. 4, 1992, at 12. The court stated that despite its visual inspection, it was unable to determine whether or not the poles were actually on

Appellant's land or on the right of way. *Id.* at 8. The court, however, found that Appellant "can readily determine whether or not any of the power line poles are located with the 12-foot right of way, "and went on to order Appellant to "remove or cause to be removed any power line poles erected within the 12-foot right or way." *Id* at 15, 16. Appellant takes issue with this finding and the injunctive relief imposed.

## DISCUSSION

■ The trial court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles. *Amwest Mortgage. v. Grady,* 925 F.2d 1162, 1163 (9th Cir. 1991). Appellant argues that the trial court applied erroneous legal principles to reach its conclusion that the easement cannot be used for utility poles. We agree.

A review of the record and the relevant case authority supports the trial court's finding that Appellant owns an implied easement by necessity over the 12-foot right of way.[1] We hold, however, that the trial court improperly limited the use of that easement by Appellant to only ingress and egress.

■ The extent of an implied easement must be inferred from all of the circumstances of the case, including those uses that can be reasonably expected. *Kytasty v. Godwin,* 162 Cal.Rptr. 556, 562 (Cal. Dist. Ct. App. 1980). It is assumed that the parties contemplated such uses of the easement as might reasonably be required by normal development of the land. *Fristoe v. Drapeau,* 215, P.2d 729, 732 (Cal. 1950). "An easement by necessity can include not only the right to erect poles along that road on which may be strung wires for the transmission of electricity to and from that habitation").

---

[1] The trial court stated that:

> the unobjected use of the 12-foot right of way by Moors for some 13 years and by [Appellant] for some 8 years, along with the foreseeability of landlocked subdivision lots, is indicative of not only mutual intent to allow use of the 12-foot right of way for the benefit of both the Fujii parcel and the Moors two-acre parcel, but also of the practical and, therefore, reasonable necessity for use of this passage to [Appellant's] lot.

36

■ Balanced against these principles is the rule that the grantee of an easement by implication may not materially increase the burden on the servient estate. *Schwob v. Green*, 215 N.W.2d 240, 244 (Iowa 1974).

■ The trial court found that it was foreseeable that Mr. Moors would subdivide his lots leaving at least one lot "landlocked." We find that it was also foreseeable that a purchaser of one of those landlocked lots, such as appellant, would want to build a residence or any other structure on that lot. In these modern times, the installation of utility lines, if not an absolute necessity, is a practical necessity incident to the use or property as a residence.

Moreover, because the trial court was unable to determine which power line poles, if any, are in the right of way, it cannot be said that the current placement of the poles "materially increases the burden" on Appellee's estate. Thus, we are persuaded that the trial court's decision to limit the easement to only ingress and egress to Appellant's property is not justified on this record.[2]

## CONCLUSION

For the foregoing reasons, the judgment of the Land and Titles Division is MODIFIED to delete the restriction of the use of the 12-foot right of way for ingress and egress and to allow appellant to use the easement as is reasonable necessary to provide utilities to his land. The trial court's injunction ordering appellant to remove any power line poles from the 12-foot right of way is VACATED.

---

[2] In so holding, we find it unnecessary to construe the "Deed of Easement for the American Samoa Power Authority" executed by the parties on February 8, 1989.